UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROHN PADMORE, INC. and RON H.
PADMORE,

Plaintiffs,

- against -

LC PLAY INC. d/b/a/ LaQUE
CLOTHING and ERASTUS PRATT,

Defendants.



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 1/11/10

**OPINION AND ORDER**

06 Civ. 0498 (PKL)

*APPEARANCES*

STEWART LAW FIRM
133-40 Hook Creek Blvd.
Rosedale, New York, 11422
Nadira S. Stewart, Esq.

Attorneys for Plaintiffs

Sandback, Birnbaum & Michelen
200 Old Country Road
Mineola, New York 11501
Oscar Michelen, Esq.

Attorneys for Defendants LC Play Inc. d/b/a/ LaQue Clothing
and Erastus Pratt.

1

In this diversity case, plaintiffs Rohn Padmore, Inc. and

Ron H. Padmore (collectively "Padmore") bring suit against L.C.

Play, Inc. d/b/a LaQue Clothing and Erastus Pratt (collectively

"LaQue") for: (i) copyright infringement; (ii) trademark

infringement; (iii) breach of contract; (iv) violations of the

New York State Human Rights Law ("NYSHRL") and New York City

Human Rights Law ("NYCHRL"); and (v) libel and defamation.

Currently pending before the Court is LaQue's motion for summary

judgment as to all but the breach of contract claim. For the

reasons set forth below, LaQue's motion for summary judgment as

to the copyright infringement, trademark infringement and

defamation claims is GRANTED, while its motion for summary

judgment as to Padmore's claims brought under the NYSHRL and

NYCHRL is DENIED.

## BACKGROUND

### I. Padmore's Employment at LaQue

LaQue is a New York clothing manufacturer whose sole

shareholder is defendant Erastus Pratt ("Pratt"). (Def.'s Local

Rule 56.1 Statement of Undisputed Facts ("Def.'s 56.1") ¶ 1.)

On May 9, 2005, LaQue and Padmore entered into a written

contract (the "Employment Agreement" or "contract"). Pursuant

to the Employment Agreement, Padmore was to be employed by LaQue

from June 1, 2005, until June 30, 2006, and was to perform a

2

range of services for LaQue, including "Public Relations,"
"Event Planning and Coordination," "Selection and management of
talent (models, photographers, etc.) used for ad campaigns, and
press materials" and similar, related duties. (See Decl. of
Nadira Stewart ("Stewart Decl.") Ex. C.) In return for these
services, Padmore was to be paid $2,750.00 per month, with
regular increases in payment after three months. (Id.) The
Employment Agreement also permitted Padmore to charge LaQue for
"[a]ny additional services" that he was asked to perform for the
company. (Id.)

During the first month of his employment Padmore worked for
LaQue at LaQue's offices in New York City. (Def's. 56.1 ¶ 8.)
After this initial period, Padmore worked primarily from his
home in Los Angeles, but returned to LaQue's offices in New York
City three times. (Id. at ¶¶ 7, 8.)

Padmore claims that at some point during his employment
with LaQue, he designed a press kit for the company that
contained a new marketing phrase of his own creation, entitled:
"Life+Style=LaQue." (Plaintiffs' Local Rule 56.1 Counter
Statement ("Pl.'s 56.1") ¶ 10.) Padmore did not separately
charge LaQue for the creation of the press kit and marketing
phrase, but he claims to have told Pratt of his interest in
these purported copyrighted and trademarked works in a phone

3

call that occurred around the time Padmore was terminated from LaQue. (Pl.'s 56.1 ¶9; Def.'s 56.1 ¶ 9.)

## II. Padmore's Termination From LaQue

Pursuant to the Employment Agreement, Padmore was to be employed by LaQue from June 1, 2005, until June 30, 2006. (See Stewart Decl. Ex. C.) However, Padmore's employment ended on September 26, 2005, when LaQue sent Padmore an e-mail stating that LaQue "has terminated the agreement with you due to marketing directions." (Def's. 56.1 ¶ 13; Stewart Decl. Ex. H.) Subsequent to this initial email identifying "marketing directions" as the reason for his termination, Padmore received a second e-mail on October 12, 2005,("the October 12 E-mail") from Erastus Pratt's email account at LaQue, stating that:

> The reason for your termination was because of the image of my company. The models and other people had questions about your sexuality and my company can't afford to [be] attached to no gay shit. How does it look for an mens [sic] clothing line to have a fruit cake as the spokes person [sic], not my company. Sorry dude, but that's just how this business is. Best of Luck. [Signed Erastus Pratt].

(Pl.'s Local Rule 56.1 Statement of Add'l. Material Facts ("Pl.'s Add'l. 56.1") ¶ 45; Stewart Decl. Ex. J.) Padmore points to this e-mail as evidence that LaQue terminated his employment based on a belief that he is homosexual. (Pl. Add'l

4

56.1 ¶¶ 45-47; Pl.'s Mem. of Law in Opp'n to Def.'s Mot. for Summ. J. ("Pl.'s Opp.'n") 13-14.)

Padmore contends that he is not homosexual, that he never told Pratt that he was homosexual, but that Pratt believed at the time of his employment that Padmore was homosexual. (Pl.'s Add'l 56.1 ¶¶ 46-47; Pl.'s 56.1 ¶ 3.) In response, LaQue contends that even if the October 12 e-mail was sent from Pratt's e-mail account it may have been written and sent by someone else at LaQue that had access to Pratt's computer. (Def.'s Local Rule 56.1 Statement of Disputed Facts ("Def.'s Disp. 56.1") ¶ 1.)

## DISCUSSION

The Court begins by addressing the standards applicable to summary judgment motions. The Court then assesses LaQue's argument for summary judgment on Padmore's copyright, trademark, and defamation claims - none of which has been addressed by Padmore in his brief opposing summary judgment. Finally, the Court assesses Padmore's claims under the NYSHRL and NYCHRL.

## I. Standard of Review

Rule 56 of the Federal Rules of Civil Procedure permits summary judgment where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there

is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). "The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment, and in assessing the record to determine whether there is a genuine issue as to a material fact, the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." Atl. Mut. Ins. Co. v. CSX Lines, L.L.C., 432 F.3d 428, 433 (2d Cir. 2005) (quoting Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc., 391 F.3d 77, 83 (2d Cir. 2004)); Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 36 (2d Cir. 1994) (Kearse, J.). "If there is any evidence in the record from which a reasonable inference could be drawn in favor of the non-moving party on a material issue of fact, summary judgment is improper." Westinghouse Credit Corp. v. D'Urso, 278 F.3d 138, 145 (2d Cir. 2002); accord Brown v. Cara, 420 F.3d 148, 152 (2d Cir. 2005) ("We will affirm the District Court's grant of summary judgment to defendants only if, based on facts not in genuine dispute and drawing all inferences in favor of plaintiffs, defendants are entitled to judgment on the merits as a matter of law."). "A dispute as to a material fact is 'genuine,' and hence summary judgment is not appropriate, under this standard, only 'if the evidence is such that a reasonable

jury could return a verdict for the nonmoving party.'" Lang v.
Ret. Living Publ'g Co., 949 F.2d 576, 580 (2d Cir. 1991)
(quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106
S.Ct. 2505, 2510 (1986)); accord N.Y. Stock Exch., Inc. v. New
York, N.Y. Hotel LLC, 293 F.3d 550, 554 (2d Cir. 2002).

## II.  Copyright, Trademark and Defamation Claims

Padmore's first, second and fifth causes of action are for
copyright infringement, trademark infringement and defamation.
In his complaint, Padmore alleges that LaQue infringed
copyrighted and trademarked works consisting of "[p]laintiffs'
design, photographic, videographic, promotional, and marketing
materials," and that LaQue "knowingly and intentionally
published false allegations that detrimentally affected
Plaintiffs' professional reputation," and "made false statements
that Plaintiffs had failed to comply with its contractual
obligations." (Compl. ¶¶ 46, 52, 69-70.)

LaQue moves to dismiss these claims on several grounds,
including that the alleged copyrighted and trademarked works
were "works for hire" and that any allegedly defamatory remarks
made by LaQue were statements of opinion that do not constitute
defamatory speech.  (See Def.'s. Mem. 11-12, 20-24.)  In his
opposition brief, Padmore only addresses his claims for relief
under the NYCHRL and NYSHRL, and fails to respond to LaQue's

arguments for why summary judgment should be granted on the
copyright, trademark, and defamation claims. "Where one party
fails to respond to an opposing party's argument that its claim
must be dismissed, courts may exercise their discretion and deem
the claim abandoned." Souleymane M'Baye v. World Boxing Assoc.,
Nos. 05 Civ. 9581, 06 Civ. 3439, 2009 U.S. Dist LEXIS 69139, at
*24, 25 (S.D.N.Y. July 29, 2009) (Chin, J.) (granting summary
judgment and dismissing claim when plaintiff failed to address
defendant's argument in its opposition papers). Under these
circumstances, the Court finds that Padmore has abandoned his
copyright, trademark, and defamation claims. See Robinson v.
Am. Int'l Group, No. 08 Civ. 1724, 2009 U.S. Dist. LEXIS 90801,
at *12 n.65 (S.D.N.Y. Sept. 30, 2009) (collecting cases); Taylor
v. City of New York, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003)
("Federal courts may deem a claim abandoned when a party moves
for summary judgment on one ground and the party opposing
summary judgment fails to address the argument in any way.").

    Even if Padmore did not abandon his claims, summary
judgment would be warranted at least on the copyright and
defamation claims for a number of additional reasons.[1]  The
gravaman of Padmore's copyright claim appears to be that LaQue

---

[1] Although this issue is moot because the trademark claims have been
abandoned, based on the modicum of information and argument presented
on this issue, the Court has doubts as to potential validity of
Padmore's trademark claims.

has infringed his copyright in the slogan "Life+Stle=LaQue," but slogans such as these are not subject to copyright protection. See Lewinson v. Holt, No. 07 Civ. 10955, 2009 U.S. Dist. LEXIS 87652, at *49 (S.D.N.Y. Sept. 21, 2009) ("[I]t is axiomatic that words, short phrases, titles, and slogans are not subject to copyright, even if they can be trademarked.") (quoting Moody v. Morris, 608 F. Supp. 2d 575, 579 (S.D.N.Y. 2009) (denying copyright protection to the phrase "Where Words Come Alive")); Dobson v. NBA Props. Inc., No. 98 Civ. 7696, 1999 U.S. Dist. LEXIS 1834, at *5 (S.D.N.Y. Feb. 19, 1999) (denying copyright protection to the slogan "Repeat Threepeat"). In addition, Padmore's failure to "state the particular person or persons to whom [LaQue's] allegedly slanderous or libelous comments were made as well as the time and manner in which the publications were made" is fatal to his claims for libel and defamation.[2] Hawkins v. City of New York, No. 99 Civ. 11704, 2005 U.S. Dist. LEXIS 15898, at *50 (S.D.N.Y. Aug. 8, 2005); Wang v. Educ.

---

[2] LaQue contends that Padmore's libel and defamation claims are governed by California law because California is the state of Padmore's domicile. (See Def.'s Mem. 20.) For the purposes of completeness, the Court notes that these claims fail under California law for the same reason that they fail under New York law: "[I]t is impossible to determine . . . when the statements were made, the form of the defamatory statements, or to whom the Defendant[] made the statements." Keiser v. Lake County Superior Court, No. C-05-02310, 2005 U.S. Dist. LEXIS 40378, at *45 (N.D. Cal. Dec. 12, 2005); see also White v. Hansen, No. C-05-784, 2005 U.S. Dist. LEXIS 43989, at *26-30 (N.D. Cal. July 28, 2005) (dismissing slander claims because plaintiff did not identify specific statements made by the defendant or indicate to whom the statements were made).

Comm'n for Foreign Med. Graduates, No. 05 Civ. 1862, 2009 U.S.
Dist. LEXIS 87319, at *14-15 (E.D.N.Y. Sept. 17, 2009) (granting
summary judgment where it was "unclear exactly what statements
Plaintiff claims were defamatory, and to whom such statements
were made").

For the foregoing reasons, LaQue's motion for summary
judgment as to Padmore's copyright, trademark and defamation
claims is granted.

## III. Claims for Discrimination under City and State Human Right Laws

In his fourth cause of action, Padmore alleges that LaQue
violated the NYSHRL and NYCHRL when it terminated his employment
due to the perception that he is homosexual. LaQue provides
three grounds for why summary judgment should be granted on
these claims: First, according to LaQue, the NYSHRL and NYCHRL
do not protect against discrimination based on sexual
orientation; second, as a non-resident of New York, the
protections of the NYSHRL and NYCHRL do not attach to Padmore;
and third, Padmore was an independent contractor and, therefore,
is not protected by the State and City anti-discrimination
statutes. For the reasons set forth below, these arguments are
rejected.

### 1. Evidence of Discrimination

On a motion for summary judgment, claims brought under the

10

NYSHRL and NYCHRL are analyzed under the burden-shifting

framework articulated in McDonnell Douglas Corp. v. Green, 411

U.S. 792, 802-04, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). See

Dawson v. Bumble & Bumble, 398 F.3d 211, 224 (2d Cir. 2005).

However, the NYCHRL is to be more liberally construed than the

NYSHRL. See, e.g., Suarez v. Am. Stevedoring, Inc., No. 06 Civ.

6721, 2009 U.S. Dist. LEXIS 105910, at *71-72 (E.D.N.Y. Nov. 10,

2009); Ajayi v. Dep't of Homeless Servs., No. 08 Civ. 3649, 2009

U.S. Dist. LEXIS 51124, at *24-26, n.8 (S.D.N.Y. June 18, 2009).

The three-step burden-shifting analysis is as follows:

> Ordinarily, a plaintiff must first establish a *prima
> facie* case of discrimination by showing that (1) he is
> a member of a protected class; (2) he is competent to
> perform the job or is performing his duties
> satisfactorily; (3) he suffered an adverse employment
> decision or action; and (4) the decision or action
> occurred under circumstances giving rise to an
> inference of discrimination based on his membership in
> the protected class. If the plaintiff succeeds, a
> presumption of discrimination arises and the burden
> shifts to the defendant to proffer some legitimate,
> nondiscriminatory reason for the adverse decision or
> action. If the defendant proffers such a reason, the
> presumption of discrimination created by the prima
> facie case drops out of the analysis, and the
> defendant will be entitled to summary judgment . . .
> unless the plaintiff can point to evidence that
> reasonably supports a finding of prohibited
> discrimination. The plaintiff must be afforded the
> opportunity to prove by a preponderance of the
> evidence that the legitimate reasons offered by the
> defendant were not its true reasons but were a pretext
> for discrimination.

Id. at 216 (quoting Mario v. P & C Food Markets, Inc., 313 F.3d

758, 767 (2d Cir. 2002) (internal quotation marks omitted)); see also Sassaman v. Gamache, 566 F.3d 307, 312 (2d Cir. 2009) ("[P]laintiff's burden of establishing a prima facie [] case is *de minimis*.") (citations omitted).

The Court agrees with Padmore that he has satisfied the first step of this analysis. As discussed in more detail below, Padmore is a member of a protected class, as he was perceived to be homosexual by his employer and is claiming that he was discriminated against based on his perceived sexual orientation.[3] Padmore had experience in marketing and styling prior to his employment with LaQue, and the claim that he was performing his duties satisfactorily is supported by sworn statements from a former co-worker. (See Pl.'s Add'l 56.1 ¶¶ 8-13; Affirmation of Kimberly Stewart ¶¶ 8, 13.) Padmore clearly suffered an adverse employment action, and the circumstances surrounding his termination, namely the October 12 E-mail that provides an

---

[3] The text of the NYCHRL specifically protects against discrimination based on "perceived" sexual orientation. N.Y.C. Code § 8-107(1)(a). The NYSHRL similarly protects against discrimination based on an employee's perceived sexual orientation. See N.Y. Exec. Law § 292 (27) (defining "sexual orientation" to mean "heterosexuality, homosexuality, bisexuality or asexuality, whether actual or perceived."). The legislative findings and intent that accompanied the 2002 amendment adding discrimination based on sexual orientation to the NYSHRL also makes clear that the NYSHRL is intended to address discrimination directed at individuals that are perceived to be homosexual or bisexual. N.Y. Exec. Law § 296(1)(a), L 2002, ch. 2, § 1 ("The legislature further recognizes that this prejudice [based on sexual orientation] has fostered a general climate of hostility and distrust, leading in some instances to physical violence against those perceived to be homosexual or bisexual.").

explicitly discriminatory reason for his termination, give rise to an inference of discrimination.[4]  (See Pl.'s Mem. 11-16.)

Because Padmore has met his initial burden of demonstrating a *prima facie* case of discrimination, the burden shifts to LaQue to respond with "some legitimate, nondiscriminatory reason for the adverse decision."  Dawson, 398 F.3d at 216.  Rather than respond to Padmore's arguments, LaQue has chosen to "not address the [burden shifting] argument plaintiff makes."  (Def.'s Reply Aff. ¶ 5.)  As such, LaQue has not satisfied its burden of providing a legitimate, nondiscriminatory reason for Padmore's termination, and therefore, subject to the more specific analysis below, there exists a triable issue of fact as to Padmore's claims of discrimination under the NYSHRL and NYCHRL.

Having set forth the general framework used to address Padmore's NYSHRL and NYCHRL claims, the Court now considers LaQue's three specific arguments for why summary judgment should be granted.

## 2.  Subject Matter of the NYSHRL and NYCHRL

As it partially concedes in its reply brief, LaQue erroneously argues that the NYSHRL and NYCHRL do not protect

---

[4] LaQue claims that the October 12 E-mail could have been authored by a LaQue employee other than Pratt.  (See Def.'s Disputed 56.1 ¶ 1.) Putting aside the issue of whether the identity of the author of the October 12 E-mail is relevant, "it is [the Court's] obligation at this stage to interpret ambiguities in the evidence in the light most favorable to the plaintiff."  Sassman, 566 F.3d at 313 (citations omitted).

13

against discrimination based on sexual orientation. (See Def.'s Reply Affirmation ("Rep. Aff.") ¶ 4.) In relevant part, the NYSHRL states: "It shall be an unlawful discriminatory practice [] [f]or an employer . . . because of an individual's . . . sexual orientation . . . to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment." N.Y. Exec. Law § 296(1)(a). The NYCHRL similarly prohibits "an employer . . . because of the actual or perceived . . . sexual orientation . . . of any person, to refuse to hire or employ or to bar or to discharge from employment such person." N.Y.C. Code § 8-107(1)(a); see also Dawson v. Bumble & Bumble, 398 F.3d 211, 224 (2d Cir. 2005) ("[C]laims of sexual orientation discrimination are actionable under the NYSHRL and NYCHRL").

## 3. **Geographic Scope of the NYSHRL and NYCRHL**

### A. **Discrimination Within New York**

It is undisputed that Padmore is not a New York resident, and that he was living and primarily working outside of New York at the time of his termination. (See Pl.'s 56.1 ¶¶ 4, 8, 13.) The October 12 E-mail that is at the heart of Padmore's wrongful termination allegations, however, allegedly was sent from LaQue's New York City offices, and Padmore's allegations support the conclusion that the decision to terminate Padmore was made

14

at LaQue's office in New York City. (See Pl.'s Add'l 56.1 ¶ 45; Compl. ¶¶ 35, 64-66; Pl.'s Mem. 10-11.) LaQue asserts that the NYSHRL and NYCHRL do not apply here because Padmore is not a resident of New York City or State and any discriminatory conduct committed by LaQue had an impact on Padmore outside of New York. (See Pl.'s Mem. 17-20.) In response, Padmore argues that the NYSHRL and NYCHRL are applicable because LaQue's offices are located in New York City and, in these circumstances, it is the location of the defendant corporation, rather than the location of the individual plaintiff, that controls. (See Pl.'s Opp'n 10-11.)

Absent an allegation that "a discriminatory act was committed in New York or that a New York State resident was discriminated against, New York's courts have no subject matter jurisdiction over the alleged wrong." Iwankow v. Mobil Corp., 150 A.D.2d 272, 274, 541 N.Y.S.2d 428, 429 (App. Div. 1989); Popa v. PricewaterhouseCoopers LLP, No. 08 Civ. 8138, 2009 WL 2524625, at *6 (S.D.N.Y. Aug. 14, 2009). The apparent simplicity of this jurisdictional limitation is misleading, as there is disagreement within this District as to the territorial reach of the NYCHRL and NYSHRL over nonresidents such as Padmore. Courts in this District agree that "[a] nonresident plaintiff may invoke the protection of the City and State Human Rights Laws only by proving that the discriminatory act or acts

15

took place within the jurisdiction in question." Pearce v.
Manhattan Ensemble Theater, Inc., 528 F. Supp. 2d 175, 185
(S.D.N.Y. 2007) (citing Salvatore v. KLM Royal Dutch Airlines,
No. 98 Civ. 2450, 1999 U.S. Dist. LEXIS 15551, at *49-50
(S.D.N.Y. Sept. 30, 1999); Beckett v. Prudential Ins. Co. of
Am., 893 F. Supp. 234, 238 (S.D.N.Y. 1995)). Courts disagree,
however, as to whether a nonresident plaintiff also must show
that a discriminatory act had an impact in New York City or
State for the NYCHRL and NYSHRL to apply.

For example, in Tebbenhoff v. Elec. Data Sys. Corp., the
defendant moved for summary judgment to dismiss the plaintiff's
NYCHRL and NYSHRL claims because the plaintiff was a New Jersey
resident who worked almost exclusively out of a home-office in
New Jersey and, therefore, any alleged discrimination by the
defendant was felt by the plaintiff outside of New York City and
State. No. 02 Civ. 2932, 2005 U.S. Dist LEXIS 29874, at *15
(S.D.N.Y. Nov. 29, 2005). The Court rejected this argument and
instead found that the territorial limitations of the NYSHRL and
NYCHRL were satisfied because "[t]he fact that a decision to
discriminatorily terminate a non-resident was made in New York
can alone suffice to state a claim" and, furthermore, "a
discriminatory act was committed within New York City when
defendant [employer] called and terminated plaintiff from
defendants' New York City offices." Id. at *14-15. This

16

opinion is illustrative of the decisions in this District that have indicated that a non-resident plaintiff may assert claims under the NYCHRL and NYSHRL if the discriminatory act of termination occurred in New York City. See Rylott-Rooney v. Alitalia-Linee Aeree Italiane-Societa Per Azioni, 549 F. Supp. 2d 549, 552 (S.D.N.Y. 2008) (collecting cases).

On the other hand, a number of courts have taken the jurisdictional limitations of the NYCHRL and NYSHRL one step further by requiring a non-resident plaintiff seeking recovery under these laws to show that a discriminatory act had an impact within New York City and State. For example, in Wahlstrom v. Metro-North Commuter Railroad, the plaintiff claimed to have suffered verbal and physical assault and sexual harassment by a coworker. 89 F. Supp. 2d 506, 510, 518 (S.D.N.Y. 2000) (Leisure, J.). With the exception of one statement that this Court found did not constitute sexual harassment, all of the alleged incidents of assault and harassment took place in White Plains, New York, outside the borders of New York City. Id. at 527. This Court dismissed plaintiff's claims for relief under the NYCHRL and, in summarizing the law on this issue, stated that "courts in this District [] have held that the NYCHRL only applies where the actual impact of the discriminatory conduct or decision is felt within the five boroughs, even if a discriminatory decision is made by an employer's New York City

17

office." Id. at 527; see also Salvatore v. KLM Royal Dutch
Airlines, No. 98 Civ. 2450, 1999 U.S. Dist. LEXIS 15551, at *51
(S.D.N.Y. Sept. 30, 1999) ("The fact that certain acts leading
to discrimination may occur in New York City will not
necessarily give rise to a claim under the City HRL.  To
determine the location of the discrimination, courts have looked
to the location of the impact of the offensive conduct.")
(internal citations omitted); Casper v. Lew Lieberbaum & Co,
Inc., No. 97 Civ. 3016, 1998 U.S. Dist. LEXIS 4063, at *12-17
(S.D.N.Y. Mar. 31, 1998) (dismissing claims under the NYCHRL
where the impact of the allegedly discriminatory acts was felt
by plaintiffs outside New York City).

Similar to this Court's decision in Wahlstrom, in Pearce v.
Manhattan Ensemble Theater, Inc., Judge Wood dismissed
allegations that a New York-based defendant violated the NYCHRL
and NYSHRL when it terminated the employment of an Idaho
resident who worked in locations throughout the United States,
but not in New York.  528 F. Supp. 2d at 184-86.  After first
clarifying that both the NYSHRL and NYCHRL require that a
discriminatory act have an impact in New York, the Court
dismissed plaintiff's claims on the basis that "[e]ven though it
can reasonably be inferred from the Complaint that Defendants'
allegedly discriminatory decision to terminate Plaintiff was
made in New York City, Plaintiff has failed to make the

18

requisite allegation that the decision had an impact in New York City and State." Id. at 185-86.

The requirement that a plaintiff demonstrate that a discriminatory act had an impact in New York for the NYCHRL and NYSHRL to apply has come under considerable criticism recently. In Rylott-Rooney v. Alitalia, a recent well-reasoned decision by Judge Rakoff, the Court denied a motion to dismiss claims for wrongful termination brought under the NYCHRL and the NYSHRL where the plaintiff lived outside of New York and performed most of her employment duties outside of New York, but was terminated while attending a meeting in New York City. 549 F. Supp. 2d 549, 549-51 (S.D.N.Y. 2008). The Court compared decisions that "have concluded . . . that the fact that a decision to terminate is made in New York does not establish that the City and State human rights laws cover an individual's claim," with the "number of federal district court cases [that] suggest that the fact that a termination actually occurs in New York City may be sufficient to apply the City and State human rights laws." Id. at 552. Citing the "dearth of controlling New York authority on the subject," Judge Rakoff looked to the analogous field of New York's long-arm jurisdiction over tortfeasors, and concluded that the NYCHRL and NYSHRL should apply "either when the initial discriminatory act (for example, a termination) occurs in New York or when the original experience of injury, which occurs at

19

the employee's workplace, is in New York." Id. at 554 (citing United States v. Burke, 504 U.S. 229, 246, 112 S. Ct. 1867, 119 L. Ed. 2d 34 (1992) (numerous cases have "recognized parallels . . . between tort claims and claims under antidiscrimination statutes.")).

In May 2009, New York's Appellate Division, First Department, adopted Judge Rakoff's analysis in Rylott-Rooney when it reversed a lower court's dismissal of claims for wrongful termination brought under the NYSHRL and NYCHRL. Hoffman v. Parade Publ., 65 A.D.3d 48, 878 N.Y.S.2d 320 (App. Div. 2009). The plaintiff in Hoffman was a traveling salesman who operated out of the defendant's Atlanta office, but made numerous work-related trips to New York City. Id. at 49. The plaintiff brought an age-discrimination action under the NYSHRL and NYCHRL and the defendant moved to dismiss the complaint. Id. at 50. In reversing the lower court's dismissal of the NYSHRL and NYCHRL claims for failing to state that the discrimination had an impact in New York, the Court held that the "impact rule . . . should not be applied so broadly as to preclude a discrimination action *where the allegations support the assertion that the act of discrimination, the discriminatory decision, was made in this state*." Id. at 50 (emphasis original). The Hoffman Court distinguished prior federal court decisions from this District as not involving claims where a

discriminatory decision actually was made in New York City, and criticized statements made in these decisions concerning the scope of the impact test as overly-broad dicta that is inconsistent with prior case law interpreting the NYSHRL and NYCHRL. Id. at 53-57.

After summarizing the relevant state and district court cases on point, the Hoffman court ultimately concluded that an out-of-state plaintiff is not precluded from bringing claims under the NYCHRL and NYSHRL "when the New York employer is alleged to have made its employment decisions in a discriminatory manner here." Id. 56. This holding is in accordance with Schuler v. Pricewaterhousecoopers, LLP, a recent decision from the Court of Appeals for the District of Columbia. 514 F.3d 1365, 1377-79 (D.C. Cir. 2008). In Schuler the Court characterized the defendant's argument that the NYSHRL includes an in-state impact requirement as a request for the Court "to set the plain terms of the [NYSHRL] aside." Id. at 1378. The Circuit Court went on to find that the argument that the NYSHRL applies only when a plaintiff suffers harm within New York is both inconsistent with the clear language of the statute and grounded in unsteady legal precedent. Id. at 1378-79.

## B.  Application

The Court agrees with the recent caselaw indicating that the NYSHRL and NYCHRL apply when a discriminatory act is committed in New York, even if the impact of that act is felt outside of New York.  This outcome is consistent with the plain text of the NYSHRL and NYCHRL and is supported both by the well-reasoned decisions discussed above and by application of common sense.  As the Court in Hoffman noted, "logic and common sense alone [] dictate that if an employer located in New York made discriminatory hiring or firing decisions, those decisions would be properly viewed as discriminatory acts occurring within the boundaries of New York."  65 A.D.3d at 51.  The Court agrees with this sentiment, and with the additional rationale that "it would be contrary to the purpose of both [the NYSHRL and NYCHRL] to leave it to the courts of other jurisdictions to appropriately respond to acts of discrimination that occurred here."  Id. at 57.

In this instance, LaQue's sole offices are in New York City, and the allegations and facts in the record support the finding that the allegedly discriminatory decision to terminate Padmore's employment was made in New York City.  (See Pl.'s Add'l. 56.1 ¶ 45; Compl. ¶¶ 35, 64-66; Pl.'s Mem. 10-11, 15.)  Furthermore, the termination was commenced in New York City when e-mails were sent from LaQue's New York City office on September

26 and October 12, 2005, terminating Padmore's employment and citing "lack of marketing direction" in the first instance and a desire not to have the company associated with homosexuals in the second instance. (See Def.'s 56.1 § 13; Pl.'s Add'l 56.1 ¶¶ 36, 45; Pl.'s Mem. 10-11, 15.) Under these circumstances, the Court finds that Padmore has satisfied the jurisdictional limitations of the NYSHRL and NYCHRL even if, as LaQue argues, Padmore felt the effects of the allegedly discriminatory actions outside of New York.

## 4. Padmore's Employment Status

LaQue's third and final ground for why summary judgment should be granted on Padmore's NYSHRL claim is that Padmore was an independent contractor and, therefore, is not protected by the NYSHRL.[5] For the reasons set forth below, the Court disagrees.

### A. The Reid Factors

LaQue and Padmore agree that the NYSHRL protects employees and not independent contractors. (See Pl.'s Opp'n 7; Def.'s Mem. 13-15.) LaQue and Padmore also agree that the principal test to determine whether a plaintiff is an employee or an

---

[5] LaQue's argument that Padmore is an independent contractor is directed solely at the NYSHRL claims. The Court therefore does not pass judgment on the NYCHRL claims.

independent contractor is the multi-factor test set forth in

Cmty. for Creative Non-Violence v. Reid, 490 U.S. 730, 109 S.

Ct. 2166, 104 L. Ed. 2d 811 (1989). Both LaQue and Padmore

principally rely on the Second Circuit's interpretation of the

Reid factors in Eisenberg v. Advance Relocation & Storage, Inc.,

to support their respective positions. 237 F.3d 111 (2d Cir.

2000).

"Whether an individual is an independent contractor or an

employee requires application of the common law of agency," with

reference to the thirteen factors articulated by the Supreme

Court in Reid. Attis v. Solow Realty Dev. Corp., 522 F. Supp.

2d 623, 627 (S.D.N.Y. 2007); see also Eisenberg, 237 F.3d at

113. These factors are as follows:

> [1] the hiring party's right to control the manner and
> means by which the product is accomplished . . . [;]
> [2] the skill required; [3] the source of the
> instrumentalities and tools; [4] the location of the
> work; [5] the duration of the relationship between the
> parties; [6] whether the hiring party has the right to
> assign additional projects to the hired party; [7] the
> extent of the hired party's discretion over when and
> how long to work; [8] the method of payment; [9] the
> hired party's role in hiring and paying assistants;
> [10] whether the work is part of the regular business
> of the hiring party; [11] whether the hiring party is
> in business; [12] the provision of employee benefits;
> and [13] the tax treatment of the hired party.

Reid, 490 U.S. at 751-52 (footnotes omitted). In applying the

Reid factors, "a court must disregard those factors that, in

light of the facts of a particular case, are (1) irrelevant or

24

(2) of 'indeterminate' weight." Eisenberg, 237 F.3d at 114. Though no single Reid factor is dispositive, the Second Circuit has found that in the context of anti-discrimination cases, the "'greatest emphasis' should be placed on the first factor—that is, on the extent to which the hiring party controls the 'manner and means' by which the worker completes his or her assigned tasks." Id. (quoting Frankel v. Bally, Inc., 987 F.2d 86, 90 (2d Cir. 1993)); Salamon v. Our Lady of Victory Hospital, 514 F.3d 217, 227 (2d Cir. 2008).

## B. Application of the Reid Factors

It is unclear whether the first and most important Reid factor, the hiring party's right to control the manner and means by which the product is accomplished, weighs in favor of LaQue or Padmore. In its opening brief, LaQue states that Padmore "was given wide latitude and [LaQue] provided minimal supervision" over Padmore's work; but LaQue does not support this broad assertion with any citations to the record, and there is no support for this position in LaQue's Local Rule 56.1 Statement of Undisputed Facts. (Def.'s Mem. 13.) In his opposition papers, Padmore asserts that he was "subject to a high degree of control by [LaQue]," but like LaQue he fails to support this assertion with any citations to the record. (Pl.'s Mem. 9.)

In its reply brief, LaQue claims that "the record firmly establishes that plaintiff controlled almost all of the factors of his work;" but the excerpts of Padmore's deposition that LaQue relies on for this assertion are unconvincing. (Def.'s Reply Mem. 4.) For example, LaQue relies on excerpts from Padmore's deposition concerning his interactions with a variety of media outlets. (See id. at 4 (citing Padmore Dep. 105-106, 109).) The testimony on this subject establishes that Padmore obtained media coverage for the LaQue clothing line in trade publications and on television stations, but there is nothing in the testimony cited by LaQue that supports the much broader assertion that "[Padmore] alone interfaced with [the] media for press for the company" and that he performed his duties "without any interference by [LaQue.]" (Def.'s Reply Mem. 4.) More to the point, LaQue points to nothing that establishes the amount of control LaQue had over the manner and means of Padmore's work. The Court, therefore, finds that the first Reid factor is inconclusive.

The application of the twelve remaining Reid factors does not resolve the dispute as to whether Padmore is an employee or an independent contractor. LaQue admits that the third Reid factor, the source of the instrumentalities and tools, favors Padmore. (Def.'s Mem. 15 (referring to the third Reid factor as the sixth Reid factor).) The tenth and eleventh Reid factors

also weigh in Padmore's favor. "The purpose of th[e] [tenth] factor is to determine whether the hired party is performing tasks that directly relate to the objective of the hiring party's business." Aymes v. Bonelli, 980 F.2d 857, 863 (2d Cir. 1992). LaQue is involved in the business of designing and selling clothing, and Padmore's marketing and promotional responsibilities were related directly to this objective. LaQue is a business and, therefore, the eleventh Reid factor also weighs in Padmore's favor, but this "is a factor that will always have very little weight in [the Reid] analysis." Id.

The fourth, fifth, sixth, eighth, and ninth Reid factors are in equipoise or are of little or no relevance and, therefore, are afforded no weight by this Court. See, Eisenberg, 237 F.3d at 114. The fourth factor, the location of the work, is inconclusive, as Padmore worked in LaQue's New York City offices as well as in a variety of locations outside of New York. (See, e.g., Def.'s 56.1 ¶ 8.) The fifth factor, the duration of the relationship between the parties, also is unhelpful, as Padmore's employment was intended to be for a fixed period of time, but was not for such a short duration as to indicate that Padmore was not an employee. The sixth factor, the right of the hiring party to assign additional projects, is not helpful, as the Employment Agreement was not limited to particular projects but rather covered a broad array of services

27

Padmore was to perform. The ninth factor, the hired party's role in hiring and paying assistants, also is of minimal importance, as LaQue admits that the corporate entity paid Padmore's assistants, but there appears to be a factual disagreement as to the degree of discretion and control Padmore had over the hiring of these assistants. (Compare Def.'s Mem. 14 ("While [LaQue] paid those hired by Padmore, Padmore had exclusive discretion in hiring), with Pl.'s Opp'n 9 (stating that LaQue refused to hire stylists to assist Padmore in photo shoots.)) Finally, it does not appear that Padmore's form of compensation is helpful in determining whether he was an employee or an independent contractor, and neither LaQue nor Padmore address how this factor weighs for or against their respective positions.

The remaining Reid factors weigh in favor of Padmore's position, but are not conclusive. Padmore agrees that his work for LaQue required a high degree of skill (factor two) and does not object to LaQue's position that he was given broad discretion over when and how long to perform his job duties (factor seven). LaQue places great emphasis on the fact that Padmore did not receive employee benefits (factor twelve) and was treated by LaQue as an independent contractor for tax purposes (factor thirteen). (See Def.'s Mem. 13.) However, the Second Circuit has cautioned against providing undue weight to

these two Reid factors in the context of employment

discrimination cases. See Eisenberg, 237 F.3d at 116-17. As

the Court in Eisenberg noted, "the right to be treated in a non-

discriminatory manner" is a public law right that is "not

subject to waiver or sale by individuals." Id. at 116. If

courts were to give added emphasis to the lack of employee

benefits and the tax status of a plaintiff in these

circumstances:

> workers and firms would be able to devise compensation
> packages that included a nobenefits clause and a no-
> tax-deductions clause, thereby all but insuring that
> workers are characterized as independent contractors,
> and permitting them to opt out of the anti-
> discrimination laws. But the core, substantive
> protections of the antidiscrimination laws were not
> intended to be skirted by the terms of individual
> employment contracts—even if on their face those terms
> concern only the compensation of a worker.

Id. at 117 (citation omitted). Rather than placing special

emphasis on these factors, courts in this Circuit place "special

weight on the extent to which the hiring party controls the

'manner and means' by which the worker completes her assigned

tasks," a factor that is, at this point, inconclusive based on

the minimal facts presented in LaQue's motion. Id. at 117.

Taken together, the Court finds that, at a minimum, Padmore

has raised a genuine issue of material fact as to whether he was

an employee or an independent contractor that ultimately will be

resolved by a jury. See Solow Realty Dev. Corp., 522 F. Supp.

2d at 628 (denying summary judgment as to plaintiff's NYSHRL and NYCHRL claims and stating that a jury will decide whether the plaintiff was an employee of the defendant or an independent contractor).

## CONCLUSION

For the reasons stated above, LaQue's Motion for Summary Judgment is GRANTED as to Padmore's Copyright, Trademark, and Defamation claims and DENIED as to Padmore's NYSHR1 and NYCHRL claims. The parties are directed to appear for a pre-trial conference at 11:00 a.m. on February 18, 2010, in Courtroom 18B.

**SO ORDERED.**
**New York, New York**

January __11__, 2010

U.S.D.J.